UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:21-cv-617

| | |
|---|---|
| **RANDY WILLIAMS,**<br><br>Plaintiff,<br><br>v.<br><br>**AT&T SERVICES, INC.,**<br><br>Defendant. | **COMPLAINT** |

## NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant AT&T Services, Inc. ("AT&T" or "Defendant") for discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII").

2. Plaintiff further brings this action against AT&T for wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.1, et seq.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff Randy Williams ("Plaintiff" or "Williams") is an African American male and at all relevant times resided in Charlotte, North Carolina.

4. Plaintiff presently resides in Spartanburg, South Carolina.

5. Defendant is Delaware corporation with its principal place of business in Dallas, Texas. Defendant maintains a registered mailing address in Raleigh, North Carolina.

6. Defendant is an employer within the meaning of the relevant laws and statutes.

7. Plaintiff was an employee of Defendant within the meaning of the relevant laws and statutes.

8. Plaintiff was an employee of Defendant at one of Defendant's Charlotte, North Carolina locations.

9. This action arises under federal statutes including Title VII. This Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1331 because the claims brought herein constitute a federal question under the laws of the United States.

10. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the federal claims. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Plaintiff was hired to work in this District and Defendant conducts business in this District.

12. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 26, 2021 on the basis of his race (Charge No. 430-2021-01008). The EEOC issued a Notice of Right to Sue on September 3, 2021 and this Complaint is timely filed within 90 days thereof.

## **GENERAL ALLEGATIONS**

13. Williams was hired by the Defendant on December 16, 2011 as Wire Technician in Charlotte, North Carolina.

14. Williams' job duties included, but were not limited to, installation of internet, television, and phone services, running the service lines to the house, and troubleshooting repairs.

15. Williams received good performance reviews during his employment and received annual raises.

16. In or around January 2020, James Salisbury (White) ("Salisbury") became Williams' supervisor.

17. At Williams' first meeting with Salisbury, Salisbury told him "he was going to fix him" and "stay on top of Williams." These statements were confusing to Williams, who had rarely received complaints about his work during the previous eight years.

18. Over the course of the next year after Salisbury became his supervisor, Plaintiff was written up and disciplined more than at any point in his career.

19. Upon information and belief, other African American employees who were supervised by Salisbury were also written up and disciplined at a high frequency.

20. However, the White employees who were supervised by Salisbury were rarely, if at all, written up or disciplined for the same violations the African American employees were.

21. It was common knowledge at the shop that Salisbury and other managers were more critical of African American employees and gave preferential treatment to White employees.

22. Salisbury and other managers made a concerted effort to discipline African American employees, terminate African American employees, or force them into resigning.

23. Upon information and belief, African American wire technicians were terminated at a disproportionate rate at Williams' shop.

24. Salisbury routinely communicated with Williams in a hostile and derogatory tone and would intentionally antagonize Williams.

25. Salisbury frequently ordered Williams to job sites with less than a full tank of gas and would not permit Williams to refuel at the beginning of the day. This resulted in Williams

having to refuel mid-shift, which was burdensome. However, White employees were allowed to refuel at the beginning of the day.

26. Williams was assigned more difficult jobs than his White coworkers and Salisbury would intentionally dispatch him to jobs that would bring his efficiency numbers down. For example, Salisbury would send him to jobs that other technicians were not able to complete, which resulted in Williams having to return to the specific job more than one time. Salisbury was aware that this decline in efficiency caused Williams' quality numbers to fall, which resulted in Williams failing monthly reviews by a few points.

27. Oftentimes, when Williams resolved an issue, Salisbury would dispatch a White technician to the job. The White technician would then complete the job and their efficiency numbers would go up--not Williams'.

28. In or around October 2020, an incident occured where Williams was assigned a repair that a White coworker, Brandon, had "completed." Williams was unable to resolve the problem and it was late in the day where the customers were preparing for dinner. Williams "completed" the job and told the customers AT&T would be back to resolve the issue. When Williams asked Salisbury for a resolution the next day, Salisbury said, "You can't close a job without it being completed!" Williams replied, "Brandon did. It's still doing the same thing." Salisbury replied, "We're not talking about Brandon, we're talking about you. I'm going to have to write this up." Upon information and belief, Brandon was not written up for his actions, but Williams was.

29. Shortly thereafter, on November 2, 2020, Salisbury terminated Williams' employment.

30. Williams did not receive any termination documentation.

31. Salisbury departed from the company's established termination procedure when he terminated Williams' employment.

32. As a result of the improper termination procedure, Williams' health insurance (including the health insurance for his family) was abruptly terminated.

33. The abrupt termination of health insurance caused Williams significant stress and anxiety.

34. As a result of his termination, Williams experienced severe emotional distress, including but not limited to stress, anxiety, and difficulty sleeping.

## FIRST CLAIM FOR RELIEF
### Discrimination on the Basis of Race
### Violation of Title VII of the Civil Rights Act of 1964, as amended

35. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

36. At all times relevant to this action, Plaintiff was an "employee" covered by the protections of Title VII of the Civil Rights Act of 1964 within the meaning of 42 U.S.C. § 2000e(f).

37. At all relevant times herein, Defendant employed at least 15 employees at all relevant times and is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

38. In doing the acts alleged above and herein, Defendant discriminated against Plaintiff on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.

39. Defendant's discriminatory actions included, but were not limited to (1) limiting, segregating, or classifying Plaintiff in a way that adversely affected his opportunities or status as an employee because of his race; (2) utilizing standards, criteria, or methods of administration

that have the effect of discrimination on the basis of his race; (3) singling Plaintiff out for disparate and harsher treatment because of his race; and (4) discharging Plaintiff based on his race.

40. As a direct and proximate result of said conduct, Plaintiff has suffered lost past and future wages and job benefits and has suffered and will continue to suffer emotional pain, suffering, inconvenience, embarrassment, mental anguish, and other non-pecuniary losses in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### Wrongful Discharge in Violation of Public Policy
### N.C. Gen. Stat. § 143-422.1, et seq.

41. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

42. Defendant employed at least fifteen (15) employees at all relevant times.

43. The public policy of North Carolina, as set forth in N.C. Gen. Stat. § 143-422.1, et seq. states, states, "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of . . . race."

44. Defendant violated the public policy of North Carolina as set forth in N.C. Gen. Stat. § 143-422.1, et seq. by terminating Plaintiff because of his race.

45. Such conduct by Defendant is injurious to the public policy of the state of North Carolina.

46. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

47. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

48. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Randy Williams respectfully requests that this Court enter judgment in his favor and grant him the following relief:

1. An Order awarding Plaintiff damages for Defendant's violation of Title VII of the Civil Rights Act of 1964, including backpay, lost wages, employment benefits, and any other compensation denied or lost because of Defendant's violation of Title VII of the Civil Rights Act of 1964;

3. An Order awarding Plaintiff compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

4. An Order awarding Plaintiff punitive damages under N.C. Gen. Stat. § 1D-115 in an amount to be proven at trial;

5. An Order awarding Plaintiff the costs of this action;

6. An Order awarding Plaintiff reasonable attorneys' fees;

7. An Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

8. An Order granting any other necessary or appropriate relief to which Plaintiffs are entitled under the law.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NC State Bar No. 26590
Nicole K. Haynes, NC State Bar No. 47793
GESSNERLAW, PLLC
602 E. Morehead Street
Charlotte, NC 28202
Telephone: (844) 437-7637
Fax: (980) 206-0286
Email: michelle@mgessnerlaw.com
Email: nicole@mgessnerlaw.com

*Attorneys for Plaintiff*
